UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALLANTE RAMONE BROWN, ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> ) | NO. 5:19-CR-209-GFVT-MAS |

**REPORT & RECOMMENDATION**

The Court, on referral from District Judge Van Tatenhove, held a hearing to address a reported violation of supervised release conditions by Defendant Allante Ramone Brown. Considering the violation report and the hearing testimony, the Court recommends that the District Court find Brown guilty of the alleged violation. If Judge Van Tatenhove finds Brown guilty, the Court will then hear statements from the parties on an appropriate sentence and permit Brown the opportunity to allocute.

**I.   CASE BACKGROUND**

On December 1, 2020, United States District Judge Karen K. Caldwell sentenced Brown to an 18-month term of imprisonment followed by a 3-year term of supervised release upon his plea of guilty to the charges of being a felon in possession of a firearm. [DE 49 and 51].

**II.   SUPERVISED RELEASE HISTORY**

Brown's original term of supervision began on January 4, 2021. On January 13, 2021, the United States Probation Office ("USPO") issued a Supervised Release Violation report that Brown

1

had used alcohol while on supervision. The Court accepted USPO's recommendation to require Brown to participate in substance use treatment and took no further action.

Three months later, USPO issued another supervised release violation report alleging three violations related to Brown's admitted consumption of cocaine and alcohol. On May 5, 2021, Judge Caldwell found Brown guilty of all three violations, revoked his term of supervision, and sentenced him to six months' imprisonment followed by thirty months' of supervised release.

### III.     THE INSTANT VIOLATION

Brown's second term of supervision began on October 20, 2021. USPO reported that on November 3, 2021, Lexington Metro Police arrested Brown for Aggravated Trafficking in a Controlled Substance in the First Degree (greater than or equal to 28 grams of fentanyl) in violation of KRS 218A.142.[1] This was an alleged violation of his mandatory condition to not commit another federal, state, or local crime, as set forth in the November 4, 2021, supervised release violation report.[2]

At the final hearing, Brown contested the violation. The burden was on the United States to prove by a preponderance of the evidence that Brown violated the terms of his supervision. The United States introduced the testimony of Lexington Police Officer Ryan Nichols, ATF Agent Jack Morgan, and United States Probation Officer Glenn Collins in support of its case. Brown cross-examined the government's witnesses but did not put on his own proof.

---

[1] KRS 218A.142 reads:
(1) A person is guilty of aggravated trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in:
    (a) One hundred (100) grams or more of heroin;
    (b) Twenty-eight (28) grams or more of fentanyl; or
    (c) Ten (10) grams or more of carfentanil or fentanyl derivatives.

[2] A federal grand jury also indicted Brown for this same conduct; that case remains pending before Judge Van Tatenhove. *See United States v. Brown*, 5:22-CR-24-GFVT-MAS. Upon the filing of that indictment, Judge Caldwell transferred this case to Judge Van Tatenhove.

Officer Nichols testified regarding the incident that led to Brown's arrest on November 3, 2021. Officer Nichols observed a vehicle moving in a suspicious manner in the parking lot of a hotel known for narcotics trafficking activity. Officer Nichols perceived the vehicle pull out of its parking spot in an attempt to obscure the vehicle's license plate from the view of his marked police cruiser. Law enforcement ran the vehicle's license plate number through law enforcement database and discovered the owner had an active warrant and there was a "no insurance" warning on the vehicle.[3] Based on this information from Officer Nichols, another officer effectuated a traffic stop on the vehicle. Brown was driving the vehicle with a female passenger. Officer Nichols arrived at the scene and "immediately upon contact [he] recognized Brown as a subject known to Lexington officers" because Brown's recent release from prison and suspicion that Brown was involved in high-level narcotics trafficking. [Hearing Recording at 7:30-51]. The officers called a canine unit to the vehicle. Law enforcement presented the canine to the vehicle, and it alerted to the presence of narcotics. At this same time, the passenger, Kelsey Jackson, told officers that there were narcotics concealed under the vehicle's gear shifter plate. A search of the vehicle revealed powdery substances in plastic bags in the void under the gear shifter plate and drug paraphernalia in the vehicle. Brown was arrested and questioned, and refused to make any statements related to the narcotics.

The United States introduced the lab report that described the powdery substances found in the vehicle as "[g]reen powder/solid, white powder/solid, and white solid weighing approximately 97.7 gram(s) +/- 0.8 gram in multiple plastic bags." [DE 82, Ex. 1]. The lab report stated these items were found to contain heroin and fentanyl. The report did not state whether

---

[3] The vehicle was not registered to Brown or the passenger. There was no information presented about the owner of the vehicle.

3

materials were tested together or separately, or whether only heroin or only fentanyl was found in any of the substances tested.

The United States called Agent Morgan to testify regarding the statements Ms. Jackson made to him about the events just prior to Brown's arrest. ATF Morgan testified Ms. Jackson told him that Brown approached her at the hotel and asked "if she needed anything," referring to drugs. [Hearing Recording at 46:07-15]. Agent Morgan also testified that Ms. Jackson told him she saw Brown grab an object wrapped in black tape from the driver's side door and put it in the void below the gear shift. Agent Morgan testified to additional statements Ms. Jackson made to him regarding her knowledge of Brown's alleged trafficking. The United States concluded its proof with the testimony of Officer Collins, Brown's supervising officer, who stated that he reported the alleged violation to the Court.

Brown countered that the United States had not shown by a preponderance of the evidence that he violated KRS 218A.142. That statute states that "[a] person is guilty of aggravated trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in . . . (b) Twenty-eight (28) grams or more of fentanyl[.]" KRS 218A.142. "Traffic" is defined as "manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance" and "fentanyl" is defined as "a substance containing any quantity of fentanyl, or any of its salts, isomers, or salts of isomers." KRS 218A.010(56) and KRS 218A.010(16). Namely, Brown argued the United States did not prove that he constructively possessed the narcotics with the intent to manufacture, distribute, dispense, or sell them because there was insufficient evidence that Brown had dominion or control over the narcotics, or even knew that they were in the vehicle. Brown noted that he was not the owner of the vehicle, and the only evidence in the record that he had dominion or control over the narcotics

4

came from the testimony of Ms. Jackson. Brown further argued that the government did not prove that there was 28 grams of fentanyl found in the vehicle because the lab report did not specify the amount of fentanyl in the substance tested.

The Court finds that the United States established the violation by preponderance of the evidence. The testimony and evidence were that Brown was operating a vehicle that contained narcotics and drug paraphernalia. "[T]he fact that a defendant drove a vehicle in which contraband was found is insufficient, by itself, to establish constructive possession." *United States v. Catching*, 786 Fed. App'x 535, 541 (6th Cir. 2019). There must be "other incriminating evidence" that "provide[s] some nexus between the defendant and the object he allegedly possessed in order to establish constructive possession" such as witness testimony that the defendant had been seen with the narcotics immediately before being stopped by police, the narcotics found in an area of the car that is within the immediate control of the defendant, whether other occupants of the vehicle disavowed ownership of the drugs and claimed they belonged to the defendant, and whether officers had information that the defendant had been trafficking in narcotics. *Id*. Several aspects of this "other incriminating evidence" were present here, providing the required nexus between Brown and the narcotics in the vehicle. Officer Nichols testified that Brown was driving in a suspicious manner as though to avoid law enforcement detection, indicating Brown knew there were narcotics in the vehicle and had constructive possession of them. Law enforcement found tape and baggies in the vehicle consistent with the tape and baggies used to package the narcotics found in the vehicle—another suggestion that Brown both knew the narcotics were present and intended to traffic them. Ms. Jackson told Agent Morgan she saw Brown take the narcotics from the driver's side door—and area within his immediate access and control—and hide them under the gear shifter plate. Ms. Jackson told law enforcement that the narcotics belonged to Brown and

he had offered to sell her narcotics earlier that day. Office Nichols testified the Lexington Police Department had information that Brown was involved in drug trafficking. These facts, taken together with Brown's control of the vehicle, provide the nexus set forth in *Catching* between Brown and the narcotics sufficient for the Court to conclude he constructively possessed them, as required in the trafficking statute at issue.

Finally, the United States proved by a preponderance of the evidence that there was 28 grams or more of fentanyl in the vehicle, as required for the aggravated trafficking state charge. The lab report stated the narcotics had a total weight of 97.7 grams. Pursuant to the definition set forth in KRS 218A.010(16), "fentanyl" includes "a substance containing any quantity of fentanyl." The lab report is unclear as the amount of fentanyl. However, it appears as though all of the narcotics found were weighed and tested together; thus, there were 97.7 grams of a substance containing fentanyl found in the vehicle. The Court acknowledges that this is inexact. On a preponderance standard, however, the Court finds that it is more likely than not that there was 28 grams or more of fentanyl found in the vehicle.

This case is similar to *United States v. Malone*, in which the Sixth Circuit Court of Appeals affirmed the district court's finding of a violation based on an alleged drug trafficking offense. 846 Fed. Appx. 355, 361 (6th Cir. 2021). That court rejected Malone's argument regarding the reliability of the field narcotics test, noting that scientific identification is not absolutely required to obtain a criminal conviction, much prove supervised release violation. The Sixth Circuit approved of the district court basing its conclusions on the field test as well as the corroborating facts, such as the statements of officers on the scene, the packaging of the alleged narcotics, the facts that the narcotics were hidden in a manner characteristic of trafficking, and Malone's prior history of drug trafficking convictions. *Id*. Likewise, this Court considers Brown's known

6

reputation as a drug trafficker, his suspicious driving at the scene, the positive canine alert, the concealment of the heroin and fentanyl mixture in the vehicle, and Ms. Jackson's statements to officers on the scene and later, to Agent Morgan.

### IV. CONCLUSION

For the reasons outlined above, the Court finds by a preponderance of the evidence that the United States established that Brown committed the state law offense of aggravated trafficking in the first degree of 28 grams or more of fentanyl, which was a violation of his supervised release.

The Court **RECOMMENDS** that Brown be found guilty of this violation. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Should Judge Van Tatenhove adjudge Brown guilty of the violation, the matter will be placed back on the Court's docket for a hearing on the appropriate sentence.

Entered this 27th day of May, 2022.



Signed By:
Matthew A. Stinnett  MAS
United States Magistrate Judge