UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 5:19-cr-00209-GFVT-MAS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ALLANTE RAMONE BROWN, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Recommended Disposition filed by United States Magistrate Judge Matthew A. Stinnett. [R. 84.] Defendant Allante Ramone Brown has been charged with a violation of his supervised release. In 2020, Mr. Brown was sentenced to eighteen months of imprisonment, followed by three years of supervised release, after pleading guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [R. 51.] While on supervised release following a prior revocation and re-incarceration, he was arrested by the Lexington Police Department and charged with aggravated trafficking of twenty-eight grams or more of fentanyl. [R. 84 at 2.] Magistrate Judge Stinnett filed a recommended disposition regarding only whether Mr. Brown committed the charged violation. *Id.* at 1. He found that the United States proved by a preponderance of the evidence that Mr. Brown did violate KRS § 218A.142 and recommended that the Court find him guilty of violating a condition of his supervised release. *Id.* Mr. Brown objected to the recommended disposition, and the matter is now ripe for review. [R. 86.] For the reasons that follow, Mr. Brown's objections will be **OVERRULED** and the recommended disposition will be **ADOPTED** in part as and for the opinion of the Court.

**I**

Mr. Brown has now been charged with violating the conditions of his term of supervised release three times.  His original term of supervision began on January 4, 2021.  [R. 54 at 1.]  Just seven days later, he tested positive for alcohol use, which violated his terms of release.  *Id.*  He was referred to substance abuse treatment rather than having his term of supervised release revoked.  *Id.*  Three months later, Mr. Brown admitted to consuming cocaine and alcohol, was charged and found guilty of three violations, and was sentenced to six months' imprisonment to be followed by thirty months of supervised release.  [R. 61.]

Mr. Brown was released to his second term of supervision in October 2021.  He was subjected to a traffic stop on November 3 after an officer ran his plates and found that the owner of the vehicle he was driving had an active warrant.[1]  [R. 84 at 3.]  A canine was called to the vehicle and it signaled that narcotics were present.  *Id.*  Officers then initiated a search of the vehicle and found narcotics and paraphernalia after Ms. Jackson, a passenger, informed them where Mr. Brown hid the items.  *Id.*  The Lexington Police arrested and charged him with aggravated trafficking of at least twenty-eight grams of fentanyl, in violation of KRS § 218A.142.  *Id.* at 2.  The next day, the US Probation Office issued a report charging him with violating the condition of his release that he not commit another federal, state, or local crime.  *Id.*

On January 26, 2022, Mr. Brown appeared before Judge Stinnett for his initial appearance pursuant to Federal Rule of Criminal Procedure 32.1.  [R. 275.]  Mr. Brown did not request release pending his final revocation hearing.  [R. 67.]  Based on the heavy defense burden under 18 U.S.C. § 3143(a), Judge Stinnett remanded Mr. Brown to the custody of the United States Marshal.  *Id.*  On May 16, 2022, Mr. Brown appeared before Judge Stinnett for his

---

[1] Neither Mr. Brown nor his passenger, Ms. Jackson, owned the vehicle.  Judge Stinnett stated "there was no information presented about the owner of the vehicle."  [R. 84 at 3 n.3.]

final hearing.  [R. 81.]  At the final hearing, Mr. Brown contested the violation.  [R. 81.]  He argued that the United States did not prove he violated Kentucky law by a preponderance of the evidence, so he cannot be charged with a violation of his condition that he not commit another crime.  *Id.* at 4.  Specifically, he claimed the evidence was insufficient to show that (1) he constructively possessed the narcotics found in the vehicle he was driving and (2) the narcotics contained more than 28 grams of fentanyl.  *Id.* at 4-5.

Judge Stinnett issued a recommended disposition only as to Mr. Brown's guilt, stating the Court will consider the appropriate sentence after Mr. Brown's guilt is determined.  [R. 84 at 1.]  His recommendation reviewed the testimony of Lexington Police Officer Nichols, ATF Agent Morgan, and USPO Collins, as well as other evidence presented at the final hearing.  *Id.* at 2-4.  Judge Stinnett found there was sufficient incriminating evidence other than the fact that Mr. Brown was driving the vehicle to find that he constructively possessed the narcotics.  *Id.*  This other evidence included his suspicious driving, the presence of paraphernalia, his passenger's testimony that he owned the narcotics and placed them in the compartment in which they were found, and the Lexington Police Department's prior knowledge that he was engaged in narcotics trafficking.  *Id.* at 5-6.  Ultimately, Judge Stinnett recommended that Mr. Brown be found guilty of the violation.  *Id.* at 7.

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the recommended disposition or else waive his rights to appeal.  In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic."  *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*,

121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997) (unpublished opinion)).  A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy.  *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

Mr. Brown objects to Judge Stinnett's conclusion that he was in constructive possession of the narcotics found in a trap compartment of the vehicle he was driving at the time of his arrest.  [R. 86 at 4-9.]  This objection is sufficiently definite to trigger this Court's obligation to conduct a *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(C).  The Court has satisfied that duty, reviewing the entire record, including the motions, briefing, the parties' arguments, relevant case law and statutory authority, and applicable procedural rules.  For the following reasons, the Defendant's objection is **OVERRULED.**

## II

To find Mr. Brown guilty of the charged violation, the Court must find that the government proved that he violated a condition of his term of supervised release by a preponderance of the evidence.  *United States v. Moses*, 289 F.3d 847, 852 (6th Cir. 2002).  The USPO alleges that Mr. Brown violated a term of his release by committing another local, state or federal crime.  [R. 84 at 2.]  This allegation is based on his arrest by the Lexington Police Department for violating KRS § 218A.142, which criminalizes knowing and unlawful trafficking of twenty-eight grams or more of fentanyl.  KRS § 218A.142.  Under Kentucky law, "trafficking" includes actual or constructive possession with intent to sell.  *See United States v. Catching*, 786 Fed. App'x 535, 541 (6th Cir. 2019).

Mr. Brown only argues that the United States did not prove by a preponderance of the

evidence that he was in constructive possession of the narcotics found in the vehicle he was driving when he was arrested.[2]  [R. 86 at 4-9.]  He relies largely on *Catching*, in which the Sixth Circuit found that a federal defendant on supervised release did not commit drug trafficking under Kentucky law because he did not constructively possess the narcotics found in his car.  *Id*; *Catching*, 786 Fed. App'x at 541.  Mr. Brown argues that, like in *Catching*, there is an insufficient nexus between him and the recovered narcotics to establish constructive possession. *Id.* at 6-9.  He challenges each of the four facts Judge Stinnett relied on to support his finding of constructive possession:

> (1) Mr. Brown's driving in a suspicious manner; (2) "[l]aw enforcement found tape and baggies in the vehicle consistent with the tape and baggies used to package the narcotics found in the vehicle," (3) the statement made by the passenger; and (4) law enforcement's "information that Brown was involved in drug trafficking."

*Id.* at 6 (quoting R. 84 at 225-26).  Mr. Brown asserts these facts are either inapposite or insufficient to establish the nexus required to hold him responsible for constructive possession of the narcotics.

As an initial matter, the Court agrees with Mr. Brown that the tape and baggies found in the vehicle do not contribute to a nexus between himself and the narcotics.  In *Catching*, officers found two cashew containers in a vehicle driven by a defendant who had been released on supervision.  786 Fed. App'x at 537.  One container held twenty-two grams of marijuana and the other contained marijuana residue and odor.  *Id.*  The Court held that the quantity of marijuana and the empty container did not contribute to a nexus between the driver and the narcotics because nothing connected the two.  *Id.* at 542.  This is based on the principle that one does not constructively possess everything in a vehicle he is driving if he does not own the vehicle.  *Id.* at

---

[2] At the final revocation hearing, Mr. Brown also argued that the United States did not prove that the narcotics found in the vehicle amounted to at least twenty-eight grams of fentanyl.  [*See* R. 84 at 5.]  However, he states in his objection that he is now only focused on the issue of constructive possession.  [R. 86 at 3-4.]

541.  Other evidence must exist connecting items in the vehicle to the driver to find constructive possession.  *Id.*

By this logic, the tape and baggies found in the vehicle Mr. Brown was driving do not establish his constructive possession of the narcotics.  There is no indication that the tape and baggies were connected to Mr. Brown in any way other than their mere presence in the vehicle he was driving, which he did not own.  "The fact that a defendant drove a vehicle in which contraband was found is insufficient, by itself, to establish constructive possession."  *Id.* (citing *United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2019).  Therefore, the mere presence of materials commonly used to package the narcotics found in the vehicle is insufficient to create a nexus between Mr. Brown and those narcotics without information connecting him to the materials. The Court declines to adopt Judge Stinnett's recommended disposition to the extent it relied on these materials to establish the requisite nexus.

Nevertheless, the other factors on which Judge Stinnett relied establish a nexus between Mr. Brown and the narcotics by a preponderance of the evidence.  One of those factors was the officers' knowledge of Mr. Brown's involvement in drug trafficking.  [R. 84 at 6.]  He characterizes this as an "observation" that cannot establish a nexus.  [R. 86 at 7.]  But *Catching* itself states that Kentucky courts have used "whether officers had received complaints that the defendant was trafficking in drugs" as a factor contributing to constructive possession.  786 Fed. App'x at 542 (citing *McLevain v. Commonwealth*, 2005 Ky. App. Unpub. LEXIS 548, 2005 WL 1846349 (Ky. Ct. App. Aug. 5, 2005)).  Accordingly, such knowledge "provides some nexus" between Mr. Brown and the narcotics found in the vehicle he was driving.  *Id.*

Mr. Brown's suspicious driving also contributed to Judge Stinnett's conclusion that he constructively possessed the narcotics.  [R. 84 at 5.]  Again, Mr. Brown believes this is an

"observation" that "cannot constitute a nexus." [R. 86 at 7.] The Sixth Circuit has not addressed whether suspicious driving can contribute to a nexus between an individual and narcotics found in a vehicle he was driving. Other circuits have considered the issue and found that suspicious driving can be circumstantial evidence from which a jury can infer constructive possession. *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010); *United States v. Griffin*, 150 F.3d 778, 785 (7th Cir. 1998); *United States v. Iafelice*, 978 F.2d 92, 95-98 (3d Cir. 1992). This Court agrees. Suspicious driving does not suffer the tape and baggies' infirmity of lacking a connection to Mr. Brown. Instead, Mr. Brown was in control of a vehicle in which narcotics were later found and chose to drive that vehicle in a suspicious manner. That choice suggests a degree of awareness that he was engaged in unlawful behavior. His suspicious driving is "incriminating evidence" that, "coupled with [the] presence [of narcotics in the vehicle] . . . [serves] to tip the scale in favor of sufficiency." *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976). Mr. Brown's suspicious driving also contributes to a nexus between himself and the narcotics found in the vehicle.

Finally, the most significant factor contributing to this nexus is the statement his passenger, Ms. Jackson, made to officers during the traffic stop. Ms. Jackson stated that Mr. Brown took "the narcotics from the driver's side door—[an] area within his immediate access and control—and hid them under the gear shifter plate." [R. 84 at 5.] Officers then found narcotics in that location. *Id.* at 3. The narcotics were within the area of Mr. Brown's immediate access and control, which contributes to the nexus between himself and the narcotics. *Burnett v. Commonwealth*, 31 S.W.3d 878, 880 (Ky. 2000), *overruled in part and on other grounds by Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010)). Even more compelling is the fact that Ms. Jackson both "'disavowed possession of the drugs and claimed that they belonged to [the

defendant].'"  *Catching*, 786 Fed. App'x at 542 (quoting *Burnett*, 31 S.W.3d at 881).

Mr. Brown contends that the passenger's statement is comparable to the passenger statement at issue in *Catching*, which the court found was insufficient to establish a nexus.  [R. 86 at 7.]  True, "ruling out the other passenger in the vehicle cannot be sufficient to show constructive possession."  *Catching*, 786 Fed. App'x at 543.  But this is not the case "where another passenger or victim testifies that the defendant possessed the contraband in question."  *Id.*  A passenger's mere disavowal of their own possession of narcotics is insufficient to establish a nexus with the other passenger, but an additional statement that the other passenger *did* possess the narcotics contributes to a nexus.  *Id.*  In fact, *Catching* suggests that such a statement is sufficient to establish a nexus on its own.  *Id.* (citing *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (holding that victim testimony that a defendant "threaten[ed] her with a handgun minutes before the police discovered a handgun [matching the victim's description] under [the defendant's] car seat" was sufficient to find the defendant at least constructively, if not actually, possessed the handgun).  Accordingly, because Ms. Jackson both disavowed possession of the narcotics found in the car driven by Mr. Brown and testified that he had just physically possessed them and placed them in the hidden location where they were found, her statement contributes to the nexus between Mr. Brown and those narcotics.

The Court finds that the United States proved that Mr. Brown constructively possessed the narcotics found in the vehicle he was driving by a preponderance of the evidence.  A nexus exists between himself and the narcotics because of: (1) Lexington police officers' knowledge of his involvement in drug trafficking, (2) Mr. Brown's suspicious driving, and (3) his passenger's statement disavowing her own possession of the narcotics and asserting that Mr. Brown possessed them.  Accordingly, Mr. Brown did constructively possess the narcotics and the Court

will adopt Judge Stinnett's recommended disposition, except as to the portions of his recommendation relying on the presence of drug paraphernalia in the vehicle.  Because the Court finds by a preponderance of the evidence that Mr. Brown constructively possessed the narcotics, he is found guilty of the charged violation and his objection is overruled.

### III

The recommended disposition stated, "If Judge Van Tatenhove finds Brown guilty, the Court will then hear statements from the parties on an appropriate sentence and permit Brown the opportunity to allocute."  [R. 84 at 1.]  The Court finds that Brown is guilty of the violation, so the parties will engage in further proceedings before Judge Stinnett as he prepares a recommended disposition as to Mr. Brown's sentence.  Accordingly, after reviewing *de novo* the portions of the Record pertaining to the present supervised release violations, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Brown's Objections [R. 86] to the Magistrate Judge's Report and Recommendation [R. 84] are **DENIED**;

2. The Magistrate Judge's Report and Recommendation [R. 84] is **ADOPTED** as and for the Opinion of the Court, except as to its reliance on the presence of paraphernalia in the vehicle to contribute to a finding of constructive possession, and;

3. Mr. Brown is found to have violated the terms of his supervised release as set forth in the Petition filed by the U.S. Probation Office and the Recommended Disposition of the Magistrate Judge and Mr. Brown is adjudged **GUILTY**.

This the 14th day of July, 2022.

Gregory F. Van Tatenhove
United States District Judge